IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ADVOCATE CAPITAL, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| LAW OFFICES OF STEVEN | ) | JURY DEMANDED |
| IBARRA, INC, and STEVEN IBARRA, | ) | |
| | ) | |
|     Defendants. | ) | |

## VERIFIED COMPLAINT

In support of its cause of action, Plaintiff, Advocate Capital, Inc., alleges and states as follows:

### PARTIES

1. Plaintiff, Advocate Capital, Inc. ("Advocate") is a Tennessee corporation with its principal place of business at One Vantage Way, Suite C-200, Nashville, Tennessee 37228.

2. Defendant Law Offices of Steven Ibarra, Inc. (the "Firm"), is a California corporation with its headquarters at 13033 Penn Street, Suite #500, Whittier, CA 90602. The registered agent for service of process for the Firm is Steven Ibarra.

3. Defendant Steven Ibarra ("Mr. Ibarra") is a resident of the State of California with a residential address of 14079 Nona Lane, Whittier, CA 90602.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between Advocate and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Advocate is a citizen of Tennessee, and all Defendants

are citizens of the State of California. Plaintiff seeks monetary relief in an amount to be determined at trial, but not less than $196,134.09.

5. This Court also has jurisdiction as to the Firm pursuant to a Master Loan and Security Agreement (the "Loan Agreement") and Amended and Restated Master Loan and Security Agreement (the "Amended Loan Agreement") entered into between the Advocate and the Firm, which provides that the Firm agreed to "submit to the exclusive jurisdiction and exclusive venue of the United States District Court for the Middle District Court of Tennessee, and of any Tennessee state court sitting in Nashville, Tennessee, for the purpose of legal proceedings arising out of or relating to this agreement . . . ." Loan Agreement at ¶ 32; Am. Loan Agreement at ¶ 33. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**. A true and correct copy of the Amended Loan Agreement is attached hereto as **Exhibit B**.

6. This Court also has jurisdiction as to Mr. Ibarra because he executed a Guaranty for the Loan Agreement in which Mr. Ibarra agreed to "submit to the exclusive jurisdiction and exclusive venue of the United States District Court for the Middle District of Tennessee or to any other Tennessee court sitting in Nashville, Tennessee, for the purposes of all legal proceedings arising out of or relating to this Guarantee, the agreement, and the transaction contemplated thereby." A true and correct copy of the Guaranty is attached hereto as **Exhibit C**.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in the Middle District of Tennessee and all defendants have consented to this Court's personal jurisdiction with respect to this action. Additionally, the Firm and Mr. Ibarra have consented to venue in this Court. Ex. B at ¶ 33, Ex. C at p. 4.

# FACTUAL BACKGROUND

A.  **The Loan and Guaranty**

8. On or about August 29, 2018, Advocate and the Firm entered into the Loan Agreement. Ex. A.

9. The Loan Agreement provided the terms under which the Firm could request an extension of credit from Advocate and under which Advocate would loan such money. *See generally* Ex. A.

10. Generally, the Loan Agreement contemplated two possible types of extensions of credit: (1) Case Expenses Advances and (2) Working Capital Advances. *See id.* at ¶ 3.

11. The Loan Agreement does not provide a particular amount that will be loaned to the Firm. Instead, any Advance would be paid after the Firm made a specific request, if Advocate approved such request. *See id.*

12. A "Case Expense Advance" is defined as "an Advance made in connection with a particular Client Matter," whereas a "Working Capital Advance" is defined as "an Advance made to fund working capital needs of Borrower and which is not a Case Expense Advance." *Id.* at ¶ 1.

13. Under the Loan Agreement, the Firm unconditionally promised to pay Advocate the principal amount of the Loan and every other obligation of the Firm to Advocate, plus interest and applicable fees. *See* Ex. B at ¶¶ 7–9, 12.

14. For Case Expense Advances, the Firm agreed to pay two types of fees: (1) an Origination Fee equal to two percent (2%) of the total amount advanced to the Firm and (2) an AdvoTrac® Case Expense Funding Charge equal to six tenths of one percent (0.6%) per month on the outstanding principal of all amounts advanced for Case Expenses advances. *Id.* at ¶ 9(a).

15. In the Loan Agreement, the Firm also agreed to pay interest at the rate of three percent (3%) "in excess of the then applicable Prime Rate published from time to time in the Money Section of the New York regional edition of the Wall Street Journal" for Case Expense Advances. *Id.* at ¶ 8(a)(1).

16. Advocate made Case Expense Advances to the Firm in reliance on the terms of the Loan Agreement.

17. On or about September 6, 2018, Mr. Ibarra executed a Guaranty for the Loan Agreement. Ex. C.

18. Pursuant to the Guaranty, Mr. Ibarra personally guaranteed the "prompt and punctual payment and performance of all Obligations that [the Firm] may now and in the future owe to [Advocate] or incur in [Advocate's] favor." *Id.* at 1.

19. Mr. Ibarra also agreed to "immediately pay [Advocate] all amounts that [Mr. Ibarra] owe[s Advocate] under this Guaranty" upon a demand for payment made to Mr. Ibarra. *Id.* at 2.

20. On or about August 29, 2022, the Firm, as "Borrower," executed the Amended Loan Agreement, which amended and restated the original agreement. Ex. B.

21. Mr. Ibarra also signed the Amended Loan Agreement as Guarantor, affirming the continuation of the Guaranty's terms. *See* Ex. B.

22. The Amended Loan Agreement provides for the same types of advances as the original Loan Agreement. *See id.* at ¶¶ 1, 3, 4.

23. As in the original Loan Agreement, the Amended Loan Agreement provides that the Firm unconditionally promises to pay Advocate the principal amount of the Loan and every other obligation of the Firm to Advocate, plus interest and applicable fees. *See* Ex. B at ¶¶ 7–9, 12.

24. The Amended Loan Agreement also provides for the same two fees for any Case Expense Advance: (1) an Origination Fee equal to two percent (2%) of the total amount advanced to the Firm and (2) an AdvoTrac® Case Expense Funding Charge equal to six tenths of one percent (0.6%) per month on the outstanding principal of all amounts advanced for Case Expenses advances. *Id.* at ¶ 9(a).

25. In practice, the AdvoTrac® Case Expense Funding Charge, plus interest, is also referred to as a "Finance Charge" within Advocate.

26. The Amended Loan Agreement provides the same obligation for interest on Case Expense Advances as the original Loan Agreement: payment at the rate of three percent (3%) "in excess of the then applicable Prime Rate published from time to time in the Money Section of the New York regional edition of the Wall Street Journal." *Id.* at ¶ 8(a)(1).

27. The Firm agreed to repay all Case Expense Advances made with respect to a particular client matter on the occurrence of a specific event with respect to the client matter. *See id.* at ¶ 12(b).

28. Under the Amended Loan Agreement, the Firm agreed that it would timely pay all amounts due under the Loan Agreement and that the Firm's failure to make such payment would constitute an Event of Default. *See* Ex. B at ¶ 23(a).

29. Under the Amended Loan Agreement, the Firm agreed that its failure to comply with or perform under any term or condition of the Amended Loan Agreement would constitute an Event of Default. *See* Ex. B at ¶ 23(g).

30. Under the Amended Loan Agreement, the Firm agreed to reimburse Advocate on demand for all costs and expenses incurred in connection with the enforcement of Advocate's rights and remedies under the Loan Agreement. *See* Ex. B at ¶ 30(d).

B.  **The Personal Property Collateral**

31.  Further, under the Loan Agreement, the Firm granted Advocate a continuing security interest in various collateral including, but not limited to, the following (the "Collateral"):

> All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrowers may have in and with respect to each and every Client Matter.

*See* Ex. B at ¶ 14(i).

32.  Thus, the Collateral includes, but is not limited to, any and all amounts that are now, or in the future, owed the Firm including, but not limited to, any and all legal fees now or hereafter due the Firm, as well as any and all reimbursements due the Firm for any costs and expenses advanced by the Firm arising out of any lawsuits.

C.  **Default and Enforcement**

33.  Advocate provided the Loan in reliance on the conditions of the Amended Loan Agreement and Guaranty.

34.  The Loan Agreement provides that Advocate shall have all of the rights and remedies generally available to a secured party under the Uniform Commercial Code as adopted in the State of Tennessee (the "UCC"). *See* Ex. B at ¶ 24(a).

35.  Under the UCC and following the Firm's default, Advocate may collect and enforce its rights against the Collateral, Advocate may enforce the Firm's rights against any account debtors and other third parties, and Advocate may exercise the Firm's rights with respect to any property that secures the obligations of the account debtor or other third party. *See* Tenn. Code Ann. § 47-9-607.

36. Pursuant to the Loan Agreement and the Amended Loan Agreement, funds were loaned (the "Loan") to the Firm beginning on September 28, 2018, through August 8, 2023 (the "Loan").

37. The Firm's payment of finance charges for December 2023, a total of $2,993.24, was due on December 31, 2023.

38. The Firm did not pay the December 2023 finance charge by December 31, 2023.

39. The Firm's payment of finance charges for January 2023, a total of $2,903.78, was due on January 31, 2024.

40. The Firm did not pay the January 2024 finance charge by January 31, 2024.

41. The Firm's failure to pay the December 2023 and January 2024 finance charges in accordance with the terms of the Loan Agreement constituted an Event of Default under the Loan Agreement and entitled Advocate to the rights and remedies for default contained in the Loan Agreement

42. On February 21, 2024, Advocate sent the Firm a letter, through counsel, informing the Firm and Mr. Ibarra that the failure to timely pay finance charges for December 2023 and January 2024 constituted an event of default under the Amended Loan Agreement and Guaranty. Advocate informed the Firm that Advocate was voluntarily declining to exercise its remedies under the Amended Loan Agreement and Guaranty until February 28, 2024, to allow an additional opportunity for the Firm and Mr. Ibarra to cure the event of default and pay the December 2023 and January 2024 finance charges. A true and correct copy of the February 21, 2024 Letter is attached hereto as **Exhibit D**.

43. The Firm and Mr. Ibarra did not cure the event of default by February 28, 2024.

44. On February 29, 2024, Advocate, through counsel, again sent a letter to the Firm and Mr. Ibarra that it was exercising its rights under the Amended Loan Agreement and Guaranty to accelerate the maturity of the Loan and demanded that all amounts outstanding under the Amended Loan Agreement, including all amounts of principal, interest, fees, and expenses, were due and payable in full immediately. A true and correct copy of the February 28, 2024, Letter is attached hereto as **Exhibit E**.

45. The Loan is presently due and payable in full.

46. Despite Advocate's demand for payment to the Firm and Mr. Ibarra, the Firm and Mr. Ibarra have failed or refused to make payment.

47. Under the UCC, Advocate is entitled to enforce its rights against any of the Collateral, is entitled to collect any attorneys' fees and expense reimbursements owed the Firm and is entitled to enforce the Firm's attorney's lien on any recoveries or judgment in favor of Borrowers' clients. *See* Tenn. Code Ann. § 47-9-607.

## CAUSES OF ACTION

### Count I- Money Judgment for Breach of Contract as to All Defendants

48. Advocate hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

49. The Loan Agreement, the Amended Loan Agreement, and the Guaranty are valid, enforceable contracts.

50. Advocate is the owner of the indebtedness and obligations evidenced by the Loan Agreement, the Amended Loan Agreement, and Guaranty.

51.     Advocate has fully performed and complied with all terms and provisions of the Loan Agreement, the Amended Loan Agreement, and Guaranty. To the extent any obligation was not performed, such performance is excused by Defendants' prior breach.

52.     Despite Advocate's demand, the Firm and Mr. Ibarra have refused or failed to pay the unpaid principal, accrued but unpaid interest, applicable fees (origination, administrative, or annual), legal fees, and expenses owed to Advocate under the Loan Agreement, the Amended Loan Agreement, and Guaranty.

53.     The Firm's failure to pay the above-stated amounts constitutes a material breach of the Loan Agreement and the Amended Loan Agreement.

54.     Mr. Ibarra's failure to pay the above-stated amounts constitutes a material breach of the Guaranty.

55.     Based on the Firm's breach of the Loan Agreement and the Amended Loan Agreement, and Mr. Ibarra's breach of the Guaranty, Advocate is entitled to judgment against the Firm and Mr. Ibarra, jointly and severally, for all unpaid principal, accrued but unpaid interest, applicable fees (origination, administrative, or annual) fees, legal fees and expenses owed Advocate under the Loan Agreement and the Amended Loan Agreement.

56.     As of March 15, 2024, the total amount of principal, interest, fees, and expenses owed Advocate pursuant to the Loan Agreement, the Amended Loan Agreement, and the Guaranty was $196,134.09, which includes principal, accrued but unpaid interest, applicable fees, and expenses owed to Advocate.  A true and correct copy of the March 15, 2024 Payoff Report reflecting these amounts is attached hereto as **Exhibit F**.

57. Pursuant to the Loan Agreement, the Firm and Mr. Ibarra are also liable for interest going forward at the rate of 24% *per annum* (Ex. A at ¶ 8(c)), which accrues at the *per diem* rate of $122.07 per day, and attorneys' fees and costs of collection incurred by Advocate.

## Count II-Accounting and Turnover of Collateral as to All Defendants

58. Advocate hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

59. Under the UCC and the Loan Agreement, Advocate is entitled to an accounting and possession of its Collateral. *See* Tenn. Code Ann. § 47-9-609.

60. Advocate is entitled to a judgment compelling the Firm to account for and deliver all Advocate's Collateral to Advocate.

## Prayer for Relief

WHEREFORE, Advocate Capital, Inc. prays as follows:

1. For entry of judgment *in personam* against the Law Offices of Steven Ibarra, Inc. and Steven Ibarra jointly and severally, for actual damages, including unpaid principal, accrued but unpaid interest and administrative expenses, legal fees and expenses, plus pre-judgment interest at the rate of 24% *per annum*, all attorney's fees incurred in connection with this action and pursuing collection of any judgment awarded and post-judgment interest;

2. That this Court enter a judgment compelling the Law Offices of Steven Ibarra, Inc. and Steven Ibarra to account for and deliver all Advocate's Collateral to Advocate; and

3. That this Court grant such other relief as it deems equitable, just, or proper.

DATED: March 21, 2024

# VERIFICATION

The undersigned does hereby declare that I am the Chief Executive Officer of Advocate Capital, Inc., Plaintiff in this matter. I have custody and control of the business records of Advocate Capital, Inc. relating to the subject matter of this Complaint. These records were made at or near the time of the events recorded therein by a person with knowledge of such events and charged with responsibility for recording such events. These records are kept in the ordinary course of the business of Advocate Capital, Inc. and in accordance with the customary business practices of Advocate Capital, Inc. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read the foregoing allegations and that the allegations contained herein are true and correct based on my personal knowledge and belief or are an accurate summary of the business records of Advocate Capital, Inc. relating to the subject matter of this Complaint.

ADVOCATE CAPITAL, INC.

By: _____
    Paul B. Myers

Title: _____
    Chief Executive Officer

On this 20th day of March, 2024.

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP


By: */s/ Kimberly M. Ingram-Hogan*
    Kimberly M. Ingram-Hogan (No. 35191)
    Mike Stephens (No. 36949)
    1221 Broadway, Suite 2400
    Nashville, Tennessee 37203
    Phone: (615) 252-3592
    Fax: (615) 252-6357
    kingram@bradley.com
    mstephens@bradley.com

*Attorneys for Plaintiff Advocate Capital, Inc.*